*E-filed:*     *9/30/2008*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLAN K. SIMPSON,           )<br>                                              )<br>       Petitioner,                    )<br>                                              )<br>   vs.                                     )<br>                                              )<br>MIKE KNOWLES, Warden,   )<br>                                              )<br>       Respondent.                )<br>_____)  | No. C 03-2548 RMW (PR)<br><br>ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS |

Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On January 3, 2005, the court ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent filed an answer addressing the merits and petitioner has filed a traverse.[1] On June 3, 2008, after further consideration of the petition, the court found that petitioner appeared to state a substantive claim of ineffective assistance of counsel that is distinct from the claim identified in the order to show cause. On July 8, 2008, petitioner indicated that he does in fact intend to raise the claim of ineffective assistance of counsel described in the June 3, 2008 order. The court has now reviewed the merits of both this claim and the claim originally

---

[1] Prior to this briefing, petitioner was granted a stay. Subsequently, petitioner's request to lift the stay was granted, and the court reopened the case and renewed the order to show cause.

identified in the order to show cause, and for the reasons discussed below, finds them to be without merit.  Accordingly, the petition will be DENIED.

## BACKGROUND

Petitioner was convicted of various offenses arising out of the home invasion robbery of Lola Andalis in Fremont, California.  Ms. Andalis had been arrested in September 1998 for felony "pimping, pandering, and procuring" at her house, and in December 1998 she had pled guilty to a related offense. On January 21, 1999, a man she later identified as petitioner pointed a silver gun at her and ordered her into her house. Another man with a gun went into the garage where he shot an acquaintance of Ms. Andalis, Mr. Porte, who had been sleeping on the couch.  The two men bound and tied Ms. Andalis and Mr. Porte, and then the men took from the house a computer, a variety of musical and electronic equipment, a statue, and a yellow bag.

Ms. Andalis identified petitioner out of a photographic lineup, at the preliminary hearing, and at trial.  Mr. Porte could not identify petitioner out of the photographic lineup, but did identify him at trial.  Mr. Porte previously had told the police that he had not seen the robber who had not shot him.  Stolen items recovered from the house of petitioner's neighbor were identified by Ms. Andalis as property that had been taken from her house.  The neighbors, Eddy Gana Sr. and Eddy Gana Jr., testified that petitioner had asked Eddy Gana Jr. to store the property, and Eddy Gana Jr. had agreed to do so.

On December 20, 2000, following a jury trial in Alameda Superior Court, petitioner was convicted of first degree burglary with use of a firearm, first degree robbery with the use of a firearm, false imprisonment and receiving stolen property.  With enhancements for firearm use and prior serious felonies, he received a sentence of forty-five years to life in prison.  On direct appeal, the state appellate court affirmed petitioner's conviction and sentence on December 20, 2001.  On February 27, 2002, the California Supreme Court summarily denied his petition for review.  Petitioner filed the instant action for writ of habeas corpus on May 30, 2003.

**DISCUSSION**

A.   <u>Petitioner's Claims</u>

In the order to show cause, this court identified the claim raised in the instant matter as a claim of ineffective assistance of counsel based on the trial court's failure to properly inquire into his motion to substitute counsel pursuant <u>People v. Marsden</u>, 2 Cal.3d 118, 465 P.2d 44, 84 Cal.Rptr. 156 (1970). Upon further review of the petition and the exhibits attached thereto, the court has discovered that while this was the claim that petitioner raised on direct review to the state appellate and supreme courts, the instant federal petition raises a different claim of ineffective assistance of counsel. In the instant petition, petitioner claims that he received ineffective assistance of counsel because "trial counsel failed to disclose to [petitioner] inculpatory evidence, denying [petitioner] the ability to make an informed decision to except [sic] or reject said plea offer."[2] (Brief Attached to Form Petition at 3.) Petitioner identifies this claim in a brief attached to the federal habeas petition form as "Ground 1." (<u>Id.</u>) No other claims for relief are raised in the instant federal petition.

Petitioner did not raise in his state court appeals the claim he raises herein, namely that counsel was ineffective in failing to inform him of inculpatory evidence. Prior to raising a claim in a federal habeas petition, a petitioner must give the highest state court available a fair opportunity to rule on the merits of the claim. <u>See</u> 28 U.S.C. § 2254(b), (c); <u>Rose v. Lundy</u>, 455 U.S. 509, 515-16 (1982). Petitioner attaches as exhibits to his petition the briefs he submitted on direct appeal to the California Court of Appeal and the Supreme Court of California.[3] The only claim raised therein was the claim that the trial court failed to properly inquire into the <u>Marsden</u> motion before denying it. (Petition, Ex. A at 18, Ex. C at 2.) While one of several grounds for his <u>Marsden</u> motion in the trial

---

[2] This claim is identified in the brief attached to his form petition as "Ground 1." No other grounds for relief are raised in either the brief or the form petition.

[3] Petitioner did not file any habeas petitions or otherwise appear before the California Supreme Court on any other occasion.

Order Denying Petition for a Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.03\Simpson548den2.wpd      3

1  court was that counsel failed to inform him of inculpatory evidence, petitioner did not
2  claim in the state appellate courts, as he does here, that trial counsel's failure to do so
3  deprived him of effective assistance of counsel.  As this substantive claim of ineffective
4  assistance of counsel is distinct from the claim that the trial court failed to properly
5  inquire into the Marsden motion, it appears that the claim in the instant federal petition
6  has not been properly exhausted under 28 U.S.C. § 2254(b), (c).

7  When a claim in a federal petition is unexhausted, the court may either dismiss the
8  petition without prejudice, or deny the petition on the merits.  See 28 U.S.C. § 2254(b)(2);
9  Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999).  The record before this court is
10 sufficient for the court to review the merits of petitioner's claim that counsel was
11 ineffective in failing to inform him of inculpatory evidence insofar as petitioner's
12 arguments in support of this claim set forth in his petition and traverse, as well as the state
13 trial and appellate records.  Accordingly, the court has reviewed the claim on its merits,
14 and, for the reasons discussed below, denies the claim.

15 Additionally, although the Marsden claim does not appear to have been raised in
16 the instant petition, the court has nevertheless reviewed the claim because the order to
17 show cause identified it as a claim before this court and petitioner may have relied upon
18 that order in believing that this court would consider such claim.  In addition, petitioner
19 raised arguments related to the Marsden claim in his traverse.  For the reasons discussed
20 below, the court finds that the Marsden claim is also without merit.

21 B.   Analysis

22      1.   Legal Standard

23 This court may entertain a petition for writ of habeas corpus "in behalf of a person
24 in custody pursuant to the judgment of a State court only on the ground that he is in
25 custody in violation of the Constitution or laws or treaties of the United States."  28
26 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

27 Because the instant petition was filed after April 24, 1996, it is governed by the
28 Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, a

district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" federal law if it applies a rule different from controlling United States Supreme Court authority or comes to a different conclusion when presented with a case involving materially indistinguishable facts. Bell v. Cone, 535 U.S. 685, 694 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

A decision is an "unreasonable application" of Supreme Court law if the state court identifies the correct legal standard but applies it in an unreasonable manner to the facts before it. Id. "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (citing Williams, 529 U.S. at 410, 412). "The state court's application of clearly established law must be objectively unreasonable." Id. (citing Williams, 529 U.S. at 409).

In any event, habeas relief is warranted only if the constitutional error at issue is structural error or had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

In determining whether habeas relief is warranted, this court looks to the "last reasoned decision" of the state court to address the merits of petitioner's claim – here, the California Court of Appeal. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).

      2.      Ineffective Assistance of Counsel

Petitioner claims that he received ineffective assistance of counsel because trial

counsel failed to inform him of inculpatory evidence, and consequently he did not make an informed decision when he rejected the prosecution's plea offer prior to trial. Specifically, petitioner alleges that his trial counsel failed to disclose that petitioner's neighbors, the Ganas, would testify at trial about property stolen from Ms. Andalis that had been recovered in their home. Petitioner asserts that had he been told about the Ganas' testimony he would have accepted the prosecution's plea offer for a twelve-year prison term.

The decision whether or not to accept a plea offer is a critical stage of the prosecution at which the Sixth Amendment right to counsel attaches. Turner v. Calderon, 281 F.3d 851, 879 (9th Cir. 2002). Therefore, the two-part test of Strickland applies to counsel's ineffective assistance in connection with a defendant's decision to accept or reject a plea offer. See Hill v. Lockhart, 474 U.S. 52, 57-58 (1985); Nunes v. Mueller, 350 F.3d 1045, 1051-53 (9th Cir. 2003) (rejecting attempt to limit Hill to acceptance of plea offer). First, petitioner must establish that counsel's performance was deficient, meaning it was not "'within the range of competence demanded of attorneys in criminal cases.'" Hill, 474 U.S. at 56 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). In advising a defendant, "[c]ounsel cannot be required to accurately predict what the jury or court might find, but he can be required to give the defendant the tools he needs to make an intelligent decision." Turner, 281 F.3d at 881; see Nunes, 350 F.3d at 1053-54 (counsel must accurately convey terms of plea offer). To establish prejudice from counsel's performance in connection with a defendant's decision to reject a plea offer, petitioner must show that there is a reasonable probability that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial. Hill, 474 U.S. at 57-59; Turner, 281 F.3d at 879.

Following the jury trial, and on the day set for a court trial on petitioner's prior convictions and his sentencing, petitioner made a Marsden motion for substitution of counsel, and the trial court held an immediate hearing. (Reporter's Transcript (Respondent's Exhibit B) ("RT") at 847-48.) At the hearing, petitioner offered several

reasons that he believed his counsel's performance to be deficient, including his allegation that when he rejected the plea offer he did not know that the stolen property had been recovered from the Gana house and he had "no idea" why the Ganas were going to testify at trial.[4]  (RT at 850-51.)  Petitioner testified that after the jury was selected, there reports of the Ganas' statements were on the defense table, but petitioner only had time to "scan them." (RT at 851.)

The trial court then questioned trial counsel, Frank Lang, about petitioner's complaints.  With respect to the issue of the plea offer and the Ganas' testimony, Mr. Lang testified that just before trial the prosecution made a 12-year plea offer, "which was substantially better than any offer that had been made by the prosecution before."  (RT at 852-53.)  Believing this to be "more than a good offer" in light of petitioner's exposure and the strength of the evidence against petitioner, Mr. Lang advised petitioner to accept the offer.  (RT at 853.)  Mr. Lang further testified that petitioner was "well aware" that property was recovered from the Ganas's house, and that he informed petitioner that the Ganas would testify.  (RT at 858-60.)  Mr. Lang testified as follows:

> We certainly – Mr. Simpson and I had several conversations about what was recovered, however, from the Gana household. . . . He may not recall it, but I do.  He knew that I considered the Ganas adverse witnesses.  I told him, in fact, when we started the trial and [the prosecutor] presented the list of witnesses, I recall having a conversation with [petitioner] in which I said, you know, I'm not happy with the fact that the Ganas are witnesses because they're going to be adverse witnesses.
> I don't recall whether we discussed exactly what they were going to say, but I'm sure we discussed the fact that they were going to say that the property had been recovered.  I don't know what else they would have possibly testified to.

(RT at 859-60.)  Petitioner was then given an opportunity to respond, but he did not further address the issue of whether he knew about the recovered property at the Ganas household and that they would testify about it.  (RT at 860.)  The trial court then denied the motion, finding that counsel did not perform deficiently and that petitioner's complaints about his representation were without merit.  (RT at 862-63.)

---

[4] The remaining allegations about counsel's performance are addressed in the next section of this order, below.

The California Court of Appeal, in rejecting petitioner's claim that the trial court had insufficiently inquired into his <u>Marsden</u> motion, made the factual finding that counsel had in fact informed petitioner that stolen property was recovered at the Gana house and that the Ganas were going to testify at trial:

> Counsel was also aware of the expected testimony of appellant's neighbors regarding the recovery of the property stolen from Andalis, having received the neighbors' statements long before trial. Counsel reported that he had several conversations with appellant about the property recovered from the neighbors, and was sure they had discussed "the fact that they were going to say that the property had been recovered."

(Petition Ex. B at 3) (footnote omitted).[5][6]

Pursuant to 28 U.S.C. § 2254(d)(2), federal habeas review is deferential to factual questions resolved by the state court; the question on review is whether the state appellate court, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record. <u>Lambert v. Blodgett</u>, 393 F.3d 943, 969 (9th Cir. 2004).[7] Here, the record includes testimony by counsel at the <u>Marsden</u> hearing that he had advised petitioner "several" times that stolen property had been recovered from the Gana house and that the Ganas would testify at trial. There is nothing in the record to suggest that counsel was not credible on this point, nor is there anything in the record to suggest that the trial court could not reasonably favor this testimony over petitioner's uncorroborated testimony to the contrary. Moreover, having found that petitioner knew that the stolen property was found at the Gana house, and that the Ganas were going to testify at trial, the state courts could reasonably find that petitioner knew that the Ganas would testify about the recovered property, and not some other matter, because the only

---

[5] <u>See</u> <u>People v. Marlan Kevin Simpson</u>, No. A094112, slip op. (Cal. Ct. App. Dec. 20, 2001).

[6] Although the trial court did not explicitly make this factual finding, such a finding is implicit in its rejection of the <u>Marsden</u> motion, which included the explicit finding that counsel's performance in advising petitioner to accept the plea was proper. (RT at 861-62.)

[7] The distinct, but also deferential standard set forth in 28 U.S.C. § 2254(e)(1) applies when the federal habeas court is required to make a factual finding, as in the case of an evidentiary hearing. <u>See</u> <u>Lambert</u>, 393 F.3d at 969.

Order Denying Petition for a Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.03\Simpson548den2.wpd        8

connection the Ganas had to the case was that the recovered property was found in their house. As there is evidence in the record that reasonably supports the state appellate court's finding that counsel had adequately informed petitioner about the Ganas' testimony about the stolen property recovered at their house, petitioner is not entitled to habeas relief based on his claim that counsel was ineffective in failing to inform of such evidence. Accordingly, petitioner is not entitled to habeas relief on this claim.

### 3.     Marsden Motion

In both the state courts and in his traverse, petitioner complains that the trial court failed to inquire adequately into petitioner's Marsden motion. In his traverse, petitioner also reiterates the complaints about his counsel's performance that were articulated to the trial court as bases for his Marsden motion and raised before the state court on appeal – namely, that his trial counsel failed to inform him of the Ganas' testimony, failed to interview petitioner's mother and fiancee, and failed to interview or locate witness Cynthia Dyer.

The state appellate court thoroughly reviewed the Marsden proceedings and found no abuse of discretion by the trial court:

> Counsel's responses were sufficient to permit the trial court to rule on the motion. With regard to contacting appellant's mother, for example, counsel explained that he had attempted to do so on several occasions, without success. Counsel had also attempted to contact Dyer "early on," but "was never provided by Mr. Simpson or anyone else evidence of her whereabouts." Counsel's investigator was unable to locate Dyer at an address where she had lived when the robbery took place. During trial, the prosecutor gave counsel an address for Dyer in Orange County, without a telephone number. The prosecutor informed counsel that she had been unable to contact Dyer at that address. At that point counsel lacked time and resources to locate the witness.
>
> The prosecutor had initially planned to call Dyer as a witness, but ultimately did not. The prosecutor also told counsel that Dyer was afraid to testify and feared appellant. In view of Dyer's statements and position in the case, counsel had doubts about whether he wanted her to testify, fearing that "she might very well hurt the defense more than help it."
>
> Counsel concluded that the only viable defense was to attack the witnesses' identification of appellant [footnote omitted]. Counsel also indicated that the plea offer was unexpected, and was "more than a good offer" in view of appellant's possible exposure. Counsel advised appellant to accept the offer, but was prepared to proceed to trial if appellant so

1  chose. Counsel was also aware of the expected testimony of appellant's neighbors regarding the recovery of the property stolen from Andalis, having received the neighbors' statements long before trial [footnote omitted]. Counsel reported that he had several conversations with appellant about the property recovered from the neighbors, and was sure they had discussed "the fact that they were going to say that the property had been recovered."

Appellant then claimed his mother and fiancee had been with him at an unspecified time on the day of the robbery, and that they had both tried to contact counsel. He also asserted that counsel had told his mother anything she had to say would be irrelevant. Appellant also maintained that Dyer had tried to contact counsel, and would have testified that the victim asked her to contact appellant's family to tell them she would drop the case if they paid her $20,000. Counsel responded that he was unaware of any attempt by Dyer to contact him, and would certainly have had an investigator interview her if she had gotten in touch with him.

The trial court denied the *Marsden* motion, explaining that counsel had done what "any competent attorney would do" in advising appellant to accept the plea offer, which the court characterized as "extraordinarily good." The court noted that the victim was "an extremely strong witness," who had been adamant in her identification of appellant in court, at the preliminary hearing, and in a photo lineup [footnote omitted]. The court found "no indication that [counsel's] performance has been deficient," noting he had done a good job of attacking the second eyewitness' identification of appellant.

(Petition, Ex. B at 2-4).

In rejecting petitioner's claim, the California Court of Appeal stated:

In order to discharge his appointed counsel and substitute another attorney, a defendant must establish that his counsel is not providing adequate representation, or that he and his counsel are "'embroiled in such an irreconcilable conflict that ineffective representation is likely to result.' [Citation.]" (*People v. Mayfield* (1997) 14 Cal.4th 668, 795.) The court "must consider any specific examples of counsel's inadequate representation that the defendant wishes to enumerate. Thereafter, substitution is a matter of judicial discretion." (*People v. Horton* (1995) 11 Cal.4th 1068, 1102, quoting *Marsden*, *supra*, 2 Cal.3d at p. 124.) Appellant here was afforded ample opportunity to explain the grounds for his dissatisfaction with appointed counsel. The court also inquired of counsel with regard to his response to each of appellant's allegations, and permitted appellant to respond to counsel's explanations. After evaluating appellant's assertions and counsel's responses, the court concluded that counsel was well within the bounds of competent representation.

. . . .Appellant also claims the trial court failed to ask "probing questions," analogizing to the *Batson/Wheeler* context and citing *people v. Silva* (2001) 25 Cal.4th 345, 384-85. In the *Silva* case, the trial court had found a prima facie case of improper discrimination in the use of peremptory challenges, but failed to inquire into reasons given by the prosecution that were unsupported by the record and arguably pretextual. (*Ibid.*) We need not engage in an extended analysis of whether *Wheeler/Batson* cases are

Order Denying Petition for a Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.03\Simpson548den2.wpd     10

appropriately relied upon for analogous application in a *Marsden* context. The record here indicates that the trial court questioned both appellant and counsel in sufficient detail to allow it to discharge its duty in ruling on appellant's *Marsden* motion, and to provide an adequate record for this court's review. Appellant failed to meet his burden of establishing that his counsel should have been removed. The court did not abuse its discretion in denying appellant's motion.
</blockquote>

(Id. at 4-5) (footnotes omitted).

The state court of appeal's analysis of the claim was neither contrary to nor an unreasonable application of federal law. In People v. Marsden, the California Supreme Court established the state's procedure for seeking substitution of appointed counsel. See People v. Marsden, 2 Cal.3d 118, 465 P.2d 44, 84 Cal.Rptr. 156 (1970). The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and is properly considered in federal habeas. Schell v. Witek, 218 F.3d 1017, 1023 (9th Cir. 2000) (en banc). The Sixth Amendment requires on the record an appropriate inquiry into the grounds for a Marsden motion. Id at 1025; United States v. Robinson, 913 F.2d 712, 716 (9th Cir. 1990); Hudson v. Rushen, 686 F.2d 826, 829 (9th Cir. 1982). "However, the inquiry need only be 'as comprehensive as the circumstances reasonably would permit.'" King v. Rowland, 977 F.2d 1354, 1357 (9th Cir. 1992) (quoting Hudson, 686 F.2d at 829).

The ultimate inquiry in a federal habeas proceeding is whether the petitioner's Sixth Amendment right to counsel was violated. Schell, 218 F.3d at 1026. That is, the habeas court considers whether the denial of or failure to rule on the Marsden motion "actually violated [petitioner's] constitutional rights in that the conflict between [petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." Id.

To begin with, the record in this case evinces an appropriate inquiry into petitioner's Marsden motion by the trial court. When petitioner indicated that he wished to make a Marsden motion, the trial court provided an immediate hearing. At the hearing, the trial court first examined petitioner about his reasons for wanting a new attorney. (RT

Order Denying Petition for a Writ of Habeas Corpus
P:\PRO-SE\SJ.Rmw\HC.03\Simpson548den2.wpd       11

1  at 849-52.)  The trial court then examined defense counsel, who responded to each of
2  petitioner's complaints about his conduct, including petitioner's concerns about defense
3  counsel's alleged failure to inform him about the Ganas' testimony, his alleged failure to
4  interview his mother and fiancee, and his alleged failure to find or interview Dyer.  (Id. at
5  852-62.)  The trial court then gave petitioner the opportunity to reply.  (Id. at 861.)  When
6  both counsel and petitioner stated that they had nothing more they wished to add, the trial
7  court denied the motion, concluding that counsel's representation was "quite good" and
8  "well within the parameters of competent representation."  (Id. at 863.)  Petitioner cites to
9  no authority, and this court is aware of none, requiring a more thorough inquiry than the
10  inquiry conducted here by the trial court.

11       More importantly, petitioner fails to present any facts in the record that
12  demonstrate that a conflict between himself and his attorney had become so great that it
13  resulted in a total lack of communication or other significant impediment that resulted in
14  an attorney-client relationship that fell short of that required by the Sixth Amendment.
15  See Schell, 218 F.3d at 1026.  Nor is there any indication that the representation provided
16  by counsel was ineffective.  The record indicates that the prosecution had compelling
17  eyewitness evidence from one of the victims and that counsel properly advised petitioner
18  that his defense depended on attacking that identification evidence.  (See Petition Ex. B at
19  3-4; see also, Respondent's Ex. A (Preliminary Hearing Transcript) at 13, 15, 16, 19, 22,
20  23, 32; Ex. B, Vol. 1 (Trial Transcript) at 52-59, 80; RT at 852, 862-63)).  Counsel
21  proceeded to attack that evidence at trial, including doing a thorough job of attacking the
22  identification of petitioner by the second eyewitness, Mr. Porte.  (Petition Ex. B at4.)
23  Further, the record indicates that counsel appropriately advised petitioner to accept the
24  plea offer that was very favorable under the circumstances, but petitioner declined to do
25  so.  (See Petition Ex. B at 3-4; RT at 852-53.)

26       Based upon a review of the underlying record, the court finds that the state
27  appellate court's rejection of petitioner's Marsden claim was neither contrary to nor an
28  unreasonable application of clearly established Supreme Court precedent, nor was it

based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(1), (2). Accordingly, petitioner is not entitled to habeas relief on this claim.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED. The clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 9/30/2008

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge